IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LUIS N. GONZALES,

        Petitioner,

vs.                                                                                         No. CIV 10-604 MCA/LFG

ERASMO BRAVO, Warden,

        Respondent.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### Findings

    1. This is a proceeding on a petition for writ of habeas corpus. Petitioner Luis N. Gonzales ("Gonzales"), a prisoner in state custody, alleges due process violations in prison disciplinary proceedings.

    2. Gonzales identified 28 U.S.C. § 2254 as the statutory basis for his claim; however, he does not challenge the conviction or sentence that led to his incarceration. Rather, because he is challenging prison disciplinary proceedings and the relief he requests is restoration of his good-time credit, his claim constitutes a challenge to the execution of his sentence and is properly analyzed under 28 U.S.C. § 2241. Montez v. McKinna, 208 F.3d 862, 865 (10th Cir. 2000); Grossman v. Bruce, 447 F.3d 801, 803 (10th Cir. 2006).

---

[1] Within fourteen (14) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the 14-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

Petitioner's Allegations

3. Gonzales alleges in his Petition that on November 14, 2007, when he was incarcerated at Lea County Correctional Facility ("LCCF"), he received a disciplinary misconduct report charging him with an "A/19," that is, dealing in dangerous drugs within LCCF. A preliminary investigation concluded that the allegation was supported by reliable information obtained from a confidential informant. [Doc. 1, at 1-2]. Gonzales says he was placed in prehearing detention pending the outcome of the investigation and that he lost good time credits during this detention.

4. A hearing was held at which Gonzales was represented by another inmate, Adam Cadena, who was not Gonzales's first choice for legal representation. Gonzales alleges that Mr. Cadena was appointed by prison officials and, because he knew little about the case, was not able to represent Gonzales "to his full exten[t]." [Id., at 2-3]. A Disciplinary Decision was rendered on December 30, 2007,[2] finding Gonzales guilty of the charges. He was placed in involuntary segregation and denied good time credits.

5. Gonzales claims that the prison disciplinary proceeding violated his due process rights in that the confidential informant was not reliable, no evidence was presented to support the charges, he was not permitted the legal representative of his own choosing and, in general, he was not given a proper hearing. He also alleges that he appealed the ruling but nothing was done regarding his appeal. [Id., at 2-5].

Preliminary Issues

6. Gonzales states that he exhausted his remedies by bringing a habeas petition in state court,

---

[2]Gonzales states in his Petition that he received the Disciplinary Decision on January 8, 2008. [Doc. 1, at 2]. However, the Decision itself is dated January 30, 2007, and it contains indications that the Decision was approved by the Deputy Warden on December 21, 2007 and that a copy was given to Gonzales on December 27, 2007.

which made its way to the state supreme court. [Doc. 1, at 7]. Respondent concedes, in spite of the lack of a record, that Gonzales exhausted his prison administrative remedies; however, Respondent argues that Gonzales failed to exhaust his state court remedies. [Doc. 9, at 5]. The record supplied by both parties is somewhat unclear. However, the Court need not decide the exhaustion issue, because this Petition can be denied on the merits. *See*, Montez v. McKinna, *supra*, at 866 (while a habeas petitioner is required to exhaust state remedies whether his action is brought under § 2254 or § 2241, the federal court may deny on the merits an unexhausted petition brought under either section).

7. In addition, a petition brought under § 2241 is subject to the same one-year statute of limitations as a petition brought under § 2254. 28 U.S.C. § 2244(d)(1); Hall v. Saffle, 10 F. App'x 768, 770-71 (10th Cir. 2001). The Disciplinary Decision in this case was entered on December 30, 2007. Gonzales's habeas petition was filed on June 22, 2010. Thus, it would appear that Gonzales failed to meet the one-year deadline, although that is not entirely clear.

8. The one-year period begins to run on the date the judgment becomes final. The record is unclear as to when the Disciplinary Decision became final. Gonzales claims that he filed an appeal of the Decision but never received a response to his appeal [Doc. 1, at 2, 3-4]. Respondent states that there were no appeal documents in Gonzales's file; however, Respondent also stipulates that Gonzales exhausted his prison remedies. [Doc. 9, at 5]. In addition, the parties may have been assuming that the habeas petitions submitted to the state courts by Gonzales were "properly filed" under 28 U.S.C. § 2244(d)(2) and therefore tolled the limitations period, even though the state habeas petition that appears to be applicable to the claims in this case seems to have been filed well after the one-year federal limitations period.

9. The Court does not decide the statute of limitations issue. The record is unclear as to

3

when the period began to run, whether it was tolled due to pending state court habeas proceedings, and whether there is any ground to apply equitable tolling. The limitations issue was not raised by Respondent nor briefed by the parties and, in any event, Gonzales's claim can be denied on the merits. Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) (the one-year statute of limitations in § 2244(d) is not jurisdictional).

10. Finally, there are indications that Gonzales may have been attempting to state claims under 42 U.S.C. § 1983. He mentions the Eighth Amendment and uses the phrase "cruel and unusual punishment." [Doc. 1, at 3]. He writes at one point in his Petition, "cruel and unusual punishment due to the fact I was put in the segregation with another prisoner and no evidence to prove incident – also they removed my representation" [Doc. 1, at 4], and at another point, "Lost of good time, liberty – confined to lock up – cruel punishment 8th amend of the US Const . . . ." [Doc. 1, at 7].

11. The Court does not construe Gonzales's petition to assert claims under Section 1983. The primary thrust of his petition is that he was denied due process in connection with prison disciplinary proceedings. He seems to be claiming in addition that his placement in involuntary segregation constituted cruel and unusual punishment under the Eighth Amendment. However, as discussed below, he was not denied his due process rights in the proceedings that led to his placement in segregation. Instead, the segregation sanction was imposed as a result of Gonzales's conduct, as established at a hearing meeting the standards of due process. Such a sanction is within the authority of the prison to impose and does not constitute cruel and unusual punishment.

12. In addition, Gonzales does not seek money damages but rather asks only that his good time credit be restored. "A petition for habeas corpus attacks the fact or duration of a prisoner's confinement and seeks the remedy of immediate release or a shortened period of confinement . . .

4

. In contrast, a civil rights action for damages pursuant to 42 U.S.C. § 1983 attacks the conditions of the prisoner's confinement and requests monetary compensation for such conditions." Rhodes v. Hannigan, 12 F.3d 989, 991 (10th Cir. 1993). Gonzales does not seek money damages, and his claim based on "cruel and unusual punishment" is more aptly analyzed as a due process claim. Thus, the Court considers his Petition solely under § 2241.

## Discussion

13. "It is well settled that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment . . . . The Supreme Court has held, however, that prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Mitchell v. Maynard, 80 F.3d 1433, 1444-45 (10th Cir. 1996) (internal punctuation omitted), *citing* Wolff v. McDonnell, 418 U.S. 539, 556 (1974).

14. To meet the standards of due process under Wolff for a prison disciplinary proceeding, the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454 (1985), *citing* Wolff, at 563-66.

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence that could support the conclusion reached by the disciplinary board.

Hill, at 455-56.

15. Thus, as long as there is "some evidence to support the disciplinary committee's

5

decision" to revoke good time credits, then the requirements of procedural due process have been met. Mitchell, at 1445.

> We decline to adopt a more stringent evidentiary standard as a constitutional requirement. Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

Hill, at 456 (internal citations omitted).

16. Gonzales received advance written notice of the disciplinary charges, as detailed below. Indeed he does not allege that he never received such notice.

17. An Inmate Misconduct Report was prepared by LCCF employee D. Martinez on November 14, 2007 and submitted to Disciplinary on November 15, 2007. The report states:

> On November 14, 2007 I STIU D. Martinez concluded an investigation into the allegations that Inmate Gonzales, Luis, NMCD #31136 was involved in the distribution of illicit narcotics within LCCF. After reviewing the evidence included in this investigation, I have made the following conclusion: I have sustained the allegation of A/19 Dealing in Dangerous Drugs, against Inmate Gonzales. This was based on the reliable information obtained from the confidential informants. I am recommending that Inmate Gonzales remain in Pre hearing Detention status pending disciplinary review and disposition. This investigation will be forwarded to the Unit Disciplinary hearing Officer for review and disposition.

[Doc. 9, Ex. B].

18. The Disciplinary Officers' Investigation Report of this charge against Gonzales includes the information that on November 15, 2007, a copy of the report was issued to Gonzales, and that he understood the charges and acknowledged his right to remain silent. Gonzales declined to make

a statement at that time and declined to call a witness. He asked that Inmate Donald Bishop be assigned as his legal representative. The Disciplinary Officer's recommendation was that the matter be addressed at a major level. [Doc. 9, Ex. C]. On November 19, 2007, Gonzales signed a copy of the Disciplinary Findings and Recommendations, which recommended a major level hearing, and acknowledged that he received copies of all disciplinary material. [Doc. 9, Ex. D].

  19. The second requirement under Wolff was also met in this case. That is, Gonzales was given the opportunity, consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense, as detailed below.

  20. On November 14, 2007, Investigator D. Martinez sent a memo to Gonzales, informing him that he was being placed in involuntary segregation on the basis of information supplied by confidential informants. [Doc. 9, Ex. E, at 6-7]. The memo advised Gonzales that when an inmate is placed in involuntary segregation on grounds of confidential informant information, the name of the informant is not disclosed if such disclosure would place the informant in jeopardy of serious bodily harm or would threaten the security of the institution. In such cases, the inmate is given a summary of the facts upon which the segregation is based, sufficient to allow the inmate to challenge the truthfulness of the facts or the need for administrative segregation status. [Doc. 9, Ex. E, at 6].

  21. The memo went on to provide a brief summary, stating that confidential information was received from reliable sources indicating that Gonzales and another inmate, Jeremy Villanueva, were attempting to introduce narcotics into LCCF, and that "[t]he basis of this information was derived from the confidential informants who had first hand knowledge of the incident." [Doc. 9, Ex. E, at 7]. A note at the bottom of both pages of the memo indicates that Gonzales was given an opportunity on November 14, 2007 to sign the memo, but he refused to do so. [Id., at 6, 7].

22. A second memo, dated November 30, 2007, was prepared for Gonzales by Lt. Cathy Runyan ("Runyan"), the Inmate Disciplinary Hearing Officer for LCCF. In this memo, Runyan advised Gonzales that information from a confidential informant would be introduced at the hearing, and that she would state on the record the following information regarding the reliability of the informant: (1) this informant has provided reliable information in the past; (2) the informant's information is based on first hand observations; and (3) there is corroboration either from another source or through physical or other evidence. [Doc. 9, Ex. E, at 5].

23. The memo from Runyan went on to provide a summary of the information provided by the confidential informant to the effect that Gonzales and inmate Villanueva (also known as "Turtle") were trying to score "the chiva"[3] from Villanueva's girlfriend who was coming for a visit and who was apparently supposed to get the drugs from Gonzales's wife. The deal didn't go through, however, because the two women were unable to meet. [Doc. 9, Ex. E at 5]. The memo further noted that the Hearing Officer used due caution in preparing the summary so as not to divulge the identity of the confidential source, and it advised Gonzales that he would not be permitted at the hearing to ask specific questions about the summary designed to identify the source. Gonzales was also informed that no inmate would be found to have committed an offense solely on the testimony of a single confidential informant. [Id.].

24. A major level hearing in Gonzales's case was held on December 11, 2007 at which Runyan was the presiding officer. At the hearing, Gonzales indicated he understood the charges and also understood his right to remain silent. The record indicates that Gonzales named Adam Cadena as his legal representative; there is nothing on the record to explain why Gonzales's first choice,

---

[3] Elsewhere in the record, "chiva" is identified as heroin. [Doc. 9, Ex. #, at 3]. *See also*, Drug Slang Dictionary, http://www.noslang.com/drugs/dictionary/l (last visited September 27, 2010).

Donald Bishop, was not assigned to represent him, nor is there any indication that Gonzales protested the choice of legal representative at the hearing. Gonzales was offered but declined an interpreter. He was also advised of his right to call a readily available witness, and he declined to call any witnesses. [Doc. 9, Ex. E, at 1].

  25. The hearing was tape recorded. [Doc. 9, Ex. E, at 16]. Documentation presented at the hearing included a CD recorded by the LCCF Phone Monitoring System. [Doc. 9, Ex. E, at 1]. This telephone conversation between Gonzales and his wife includes statements by Gonzales which appear to corroborate the informant's information that Gonzales and "Turtle" were using their wives/girlfriends to bring heroin into LCCF from the outside. [Doc. 9, Ex. E, at 10]. In making these statements, Gonzales switched from English, the language used in most of the conversation, to Spanish. At the end of the hearing, Gonzales signed a form confirming that he had been advised of his rights during the course of the disciplinary hearing, including the fact that the Hearing Officer's final decision is subject to review by a Deputy Warden. [Doc. 9, Ex. E, at 16].

  26. The above-described portions of the record demonstrate that Gonzales was given the opportunity at the hearing to present witnesses and other evidence in his defense. Although he states in his Petition that LCCF did not ensure that the confidential informants were reliable, the record indicates otherwise. The confidential source's information was confirmed by another informant's statement, and the Hearing Officer certified that the confidential source had provided reliable information in the past and that the informant's knowledge in the Gonzales matter was based on first hand observations.

  27. The recorded telephone conversation provided further confirming evidence of the plan by Gonzales and Villanueva to introduce drugs into the facility. Gonzales declined to present any witnesses in his defense, but he was allowed to make a statement at the hearing in which he provided

9

his explanation of the statements he made in Spanish on the recorded phone conversation, stating he was simply talking about his son. He also stated at the hearing that LCCF was interfering with his mail, that he was being denied visits from his wife, that his wife made some statements over the phone about "Martinez and the Major" (apparently referring to LCCF employees) and that those statements are the reasons why LCCF staff "are pissed off at me," that LCCF employees bother his wife on the street, and "[t]his is all retaliation because my wife was talking shit on the phone, and calling Santa Fe." [Doc. 9, Ex. E, at 2].

28. Gonzales's legal representative thereafter made arguments to the Hearing Officer, putting the telephone conversation in the best light possible. The representative also moved to dismiss the proceedings for lack of proof. [Doc. 9, Ex. E, at 2-3].

29. Hearing Officer Runyan denied the motion to dismiss. She summarized the case and concluded: "Due to Inmate Gonzales's past history with drugs, he and his wife's past history to introduce illicit narcotics into an institution, and the conversations recorded by the LCCF Monitoring system, the Preponderance of Evidence clearly indicates the charge of Dealing in Dangerous Drug, Code A/19 are substantiated." [Doc. 9, Ex. E, at 3]. Gonzales was also advised that the decision would have an effect on classification and parole decisions. [Id.].

30. The third requirement under Wolff was also met in this case. Gonzales was given a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. On December 27, 2007, Gonzales signed the Disciplinary Decision, acknowledging he received it. [Doc. 9, Ex. F, at 2]. The Decision sets forth the evidence the Hearing Officer relied on in making her decision, including the written statement by Officer D. Martinez indicating Gonzales's involvement in distribution of drugs in the facility; the phone detail log and recorded phone conversations; indicia of reliability of the confidential informant; and the confidential

information summary. [Doc. 9, Ex. F, at 1].

31. The Disciplinary Decision recommended (subject to review by the Associate Warden) that Gonzales be subject to the following sanctions: 120 days disciplinary segregation in confinement and 90 days visitation restriction. Gonzales was also given 90 days phone use restriction, based on his "instigation and allegations against staff." [Doc. 9, Ex. F, at 1].

32. Gonzales's signature on the Disciplinary Decision also acknowledged that he was advised of the Decision, provided with a copy of the proceedings, and informed of his right to appeal. [Doc. 9, Ex. F, at 2].

33. The Court finds that Gonzales was given all the process he was due under the law. He was given advance written notice of the disciplinary charges; an opportunity, consistent with institutional safety and correctional goals, to call witnesses and present evidence in his defense; and a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Hill, at 454. In addition, the proceedings met the minimal standard that there be at least some evidence to support the decision. *See*, Mitchell, at 1445: "There was some evidence supporting the committee's finding, and it is not our job to address the validity of that evidence."

34. Gonzales raises the claim that he was denied the legal representative of his choice. Even if true, this does not constitute a violation of his due process rights in a prison disciplinary hearing. "Smith was not constitutionally entitled to counsel, and certainly not to counsel of his choice, at his [prison] disciplinary hearing." Smith v. Maschner, 899 F.2d 940, 946 (10th Cir. 1990).

## Conclusion

35. Gonzales failed to establish that his due process rights were violated in connection with the prison disciplinary hearing at LCCF. The record shows that the procedures which led to Gonzales's stay in disciplinary segregation and deprivation of his good time credits met the three-

part test of <u>Wolff</u> and, further, that the findings were supported by some evidence.  The Petition should therefore be dismissed with prejudice.

### **Recommended Disposition**

That the Petition be dismissed and this action dismissed with prejudice.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge